UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIO CESAR SOLIS DURAN,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondents.

CASE NO. C26-1824JLR

ORDER

## I. INTRODUCTION

Before the court is *pro se* Petitioner Julio Cesar Solis Duran's petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Pet. (Dkt. # 1); Am. Pet. (Dkt. # 10); Traverse (Dkt. # 8).) The Government[1] opposes the Petition. (Return (Dkt. # 5).) The court has

[1] The Federal Respondent is the Immigration Customs Enforcement ("ICE") Field Office Director (referenced herein as the "Government").

considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS the petition in part.

## II. BACKGROUND

Petitioner is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Soraghan Decl. (Dkt. # 6) ¶ 32.) He was born in Mexico and first entered the United States on an unknown date, time, or location without inspection. (*Id.* ¶ 4.) On August 8, 2010, the Washington County Jail informed Enforcement and Removal Operations ("ERO") that Petitioner was arrested for reckless driving and failure to appear in Multnomah County Circuit Court. (*Id.* ¶ 6.) The Government later served Petitioner a Notice to Appear ("NTA"), placed him in removal proceedings, and detained him at the NWIPC. (*Id.* ¶¶ 7-8.) Petitioner appeared *pro se* for a master calendar hearing on September 13, 2010; an immigration judge ("IJ") ordered him removed to Mexico, and Petitioner waived appeal of the decision. (*Id.* ¶ 9; *see also* Van Daley Decl. (Dkt. # 7), ¶ 2, Ex. 1 (2010 IJ Order).) On September 17, 2010, the Government removed Petitioner to Mexico. (Soraghan Decl. ¶ 11.)

On January 5, 2012, Petitioner filed an application to register permanent residence or adjust status with the United States Citizenship and Immigration Services ("USCIS"), which the agency later administratively closed. (*Id.* ¶ 12.) On April 2, 2014, United States Border Patrol ("USBP") encountered Petitioner after he had crossed the Rio Grande River at or near Fabens, Texas. (*Id.* ¶ 13.) The following day, USBP detained Petitioner and served him with a notice of intent to reinstate a prior order of removal. (*Id.* ¶ 14; *see also* Van Daley Decl. ¶ 2, Ex. 2 (4/2/14 Not.).) On April 16, 2014, the United

States District Court Western District of Texas convicted Petitioner of improper entry by an alien and sentenced him to 14 days with time served. (Soraghan Decl. ¶ 15.) The following day, Petitioner claimed fear of removal to Mexico and ERO referred him to USCIS for a credible fear interview. (*Id.* ¶ 16.) USCIS conducted a credible fear interview on April 22, 2014, during which time the Government represents that Petitioner withdrew his claim and requested removal to Mexico. (*Id.* ¶ 17.) On April 24, 2014, the Government again removed Petitioner to Mexico. (*Id.* ¶ 18.)

USBP encountered Petitioner again on April 26, 2014, after he entered the United States by crossing the Rio Grande River at or near Fabens, Texas. (*Id.* ¶ 19.) On April 28, 2014, the Government served Petitioner with a notice of intent to reinstate a prior order of removal and detained him at the El Paso County Detention Facility. (*Id.* ¶ 20; *see also* Van Daley Decl. ¶ 2, Ex. 3 (4/26/14 Not.).) On July 25, 2014, the United States District Court Western District of Texas convicted Petitioner for unlawful re-entry. (Soraghan Decl. ¶ 21.) On August 12, 2014, the Government again removed Petitioner to Mexico. (*Id.* ¶ 24.)

On September 6, 2023, Petitioner applied to enter the United States at the San Ysidro Port of Entry in Texas and enrolled in the Alternative to Detention ("ATD") Program. (*Id.* ¶ 25.) On the same day, the Government served Petitioner with a NTA and placed him in removal proceedings. (*Id.* ¶ 26.) On September 20, 2023, at the Government's direction, Petitioner reported to the ERO office in Portland, Oregon, and the Government issued him an Order of Recognizance ("OREC"). (*Id.* ¶¶ 25-27; *see also* Van Daley Decl. ¶ 2, Ex. 4 (OREC).)

On March 30, 2024, Petitioner filed an application for asylum and for withholding of removal. (Soraghan Decl. ¶ 28.) On June 17, 2025, Petitioner had a probation violation in Multnomah County for driving under the influence. (*Id.* ¶ 30.) On January 12, 2026, ERO Portland, Oregon, detained Petitioner due to his probation violation, arrest for driving under the influence, and missed ATD check-ins; revoked his OREC; and served him with a notice of detention and arrest warrant. (*Id.* ¶ 31.) On the same day, the Government transferred Petitioner to the NWIPC, where he has since remained. (*Id.* ¶ 32.)

On April 9, 2026, an IJ ordered Petitioner removed to Mexico and Petitioner reserved appeal to the Bureau of Immigration Appeal ("BIA"). (*Id.* ¶ 33; *see also* Van Daley Decl. ¶ 2, Ex. 8 (2026 IJ Order.) On May 8, 2026, Petitioner appealed the removal order, which remains pending with the BIA. (Soraghan Decl. ¶ 34.) Petitioner has not requested a bond hearing. (*Id.* ¶ 35.) On May 26, 2026, Petitioner filed the instant petition seeking supervised release pending all finality or, in the alternative, a bond hearing. (*See generally* Pet.) Petitioner, however, failed to name the warden of the NWIPC as a respondent. (*See id.*) The court directed Petitioner to file an amended petition naming the proper respondent. (*See generally* 6/29/26 OSC (Dkt. # 9).) Petitioner later filed an amended petition naming the warden as a respondent. (*See generally* Am. Pet.) The amended petition is now fully briefed and ripe for the court's consideration.

## III. ANALYSIS

Petitioner moves the court for an order mandating that the Government release him from detention at the NWIPC. (*See* Am. Pet. at 3.) "Courts in this circuit have an obligation to give a liberal construction to the filings of *pro se* litigants, especially when they are civil rights claims by [incarcerated persons]." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (citation omitted and emphasis added). The court liberally construes Petitioner's claim as one arguing that his detention has become so unreasonably prolonged that the Constitution requires a bond hearing. The Government considers Petitioner to be subject to detention under § 1225, contending, in pertinent part, that he is not entitled to release because "[d]etention under 8 U.S.C. § 1225(b) does not include a statutory right to a bond hearing before an [IJ]." (Return at 2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 303-04 (2018).) The Government further argues that, even if the court were to apply the *Banda* test, Petitioner's continued detention under § 1225(b) does not violate due process. (Return at 8 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019)).)

Petitioner does not provide an argument as to which section of the Immigration Nationality Act ("INA") governs his detention, and he does not appear to challenge the statutory basis for his detention. (*See generally* Am. Pet.) Rather, the substance of Petitioner's claim is that the Government should not be permitted to continue to hold him in federal custody because he is neither a threat to the community nor a poor bail risk. (*See generally id.*) The court therefore assumes Petitioner is subject to § 1225 without

considering the merits of the Government's argument and considers his requests under that framework.

**A. Petitioner is Entitled to a Bond Hearing Under *Banda*.**

"U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings*, 583 U.S. at 289. Specifically, the Government may detain noncitizens for removal proceedings if an immigration officer determines that they are not clearly and beyond a doubt entitled to admission to the United States. *Id*. at 288; 8 U.S.C. § 1225(b)(2)(A). "Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention" under § 1225. *Toktosunov v. Wamsley*, No. C25-1724TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (citation omitted). Courts in this district have adopted the *Banda* test to assess when such detention violates due process. *See, e.g., Hong v. Mayorkas*, No. C20-1784LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (citing *Banda*, 385 F. Supp. 3d at 1106). Under *Banda*, a court evaluates the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the Government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*.

The *Banda* court further clarified that, at such hearings, the burden of proof rests with the Government, which must satisfy the clear and convincing evidence standard. *Banda*, 385 F. Supp. 3d at 1107. In so concluding, the *Banda* court relied on the Ninth

Circuit's analysis in *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and determined that when at stake is freedom from prolonged detention, the Government has this burden—regardless of the stage of proceedings. *Id*.

Courts in this District consider the length of detention to be the most important factor. *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. C18-1669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019); *Hong*, 2022 WL 1078627, at *5. "[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Martinez*, 2019 WL 5968089, at *9 (citation omitted).

Here, as to the *Banda* factors: (1) the Government has detained Petitioner for more than six months (Soraghan Decl. ¶¶ 31-32); (2) Petitioner's future lengthy detention is likely as his appeal remains pending (*id*. ¶¶ 34, 36); (3) Petitioner is detained (*id*. ¶¶ 31-32); (4) the Government does not assert that Petitioner has delayed removal proceedings (*see generally* Return); (5) Petitioner does not identify any delays occasioned by the Government (*see generally* Am. Pet.); (6) there is a final order of removal (*see generally* 2026 IJ Order). All the factors either weigh in Petitioner's favor or are neutral. *Dovlatov v. Hernandez*, No. C26-0826JNW, 2026 WL 1030454, at *3 (W.D. Wash. Apr. 16, 2026) (finding petitioner's detention had become unconstitutionally prolonged with four factors favoring petitioner and two factors neutral); *Kumar v. Hermosillo*, No. C26-0389JNW, 2026 WL 523276, at *4 (W.D. Wash. Feb. 25, 2026) (same). Thus, the court concludes that Petitioner's detention has become

unreasonable, "and that due process requires the Government to provide him with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120; *see Toktosunov*, 2025 WL 3492858, at *6 (so concluding). Furthermore, this bond hearing must comply with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

## IV. CONCLUSION

Accordingly, the court ORDERS as follows:

(1) Petitioner's amended petition for a writ of habeas corpus is GRANTED in (Dkt. # 10);

(2) Within 14 days of the date of this order, the Government shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community;

(3) Alternatively, or if the bond hearing does not occur within 14 calendar days of the Order, the Government shall immediately release petitioner under appropriate conditions of release;

(4) The Government must file a status report with the court no later than 15 calendar days from this Order. The status report must detail if and when the bond hearing occurred, if the IJ granted or denied bond, and, if denied, the reasons for that denial; AND

//

//

(5) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 3rd day of August, 2026.

JAMES L. ROBART
United States District Judge